UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT EUGENE HARDESTY,

        Petitioner,

                                      Case No. 16-cv-13633
v.                                  Honorable Linda V. Parker

RANDALL HAAS,

        Respondent.

_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS
## CORPUS, DECLINING TO ISSUE A CERTIFICATE OF
## APPEALABILITY, AND GRANTING LEAVE TO APPEAL
## IN FORMA PAUPERIS

Petitioner Robert Eugene Hardesty ("Petitioner") has applied for the writ of

habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's

Wayne County, Michigan convictions for three counts of first-degree criminal

sexual conduct ("CSC"), Mich. Comp. Laws § 750.520b, two counts of second-

degree CSC, Mich. Comp. Laws § 750.520c, two counts of distributing sexually

explicit material to a minor, Mich. Comp. Laws § 722.675, one count of furnishing

alcohol to a minor, Mich. Comp. Laws § 436.1701, and one count of third-degree

child abuse, Mich. Comp. Laws § 750.136(b)(5). Petitioner alleges as grounds for

relief that (1) prejudicial other "bad acts" evidence was introduced at his trial, (2)

there was insufficient evidence to support his convictions for CSC, and (3) his trial attorney was ineffective.

Respondent argues in an answer to the petition that: Petitioner's first claim is not cognizable on habeas review, is meritless, and was reasonably adjudicated by the Michigan Court of Appeals; there was sufficient evidence to support Petitioner's CSC convictions, and the state appellate court's decision was objectively reasonable; Petitioner cannot demonstrate the factual predicate for his third claim or that counsel's performance prejudiced his defense, and the state court's decision was not an unreasonable application of clearly established federal law. The Court agrees that Petitioner's claims do not warrant habeas corpus relief. Accordingly, the Court is denying the petition.

## I. Background

Petitioner initially was charged with ten counts of first-degree CSC, three counts of second-degree CSC, two counts of distributing sexually explicit material, one count of furnishing alcohol to a minor, and one count of third-degree child abuse. The charges arose from allegations that Petitioner sexually abused two girls (LF and DW) and physically abused one boy (KW) while he was living with the youngsters and their grandmother, who was his fiancée at the time.

Petitioner waived his right to a jury trial and was tried before a Wayne County Circuit Court judge in 2014. The three complainants, their grandmother, and the officer in charge of the case testified for the prosecution.

Petitioner did not testify or present any witnesses. His defense was that the prosecution had not proved its case and that, at most, he was guilty of assault and battery as a lesser-included offense to the child-abuse charge. Defense counsel implied during his closing argument that the complainants were not credible because there were inconsistencies in their testimonies and because they delayed disclosing the abuse even though they had multiple opportunities to reveal the abuse to people they could trust.

At the close of the proofs, the prosecution dismissed two counts of first-degree CSC because the trial testimony did not support those counts. The trial court then found Petitioner not guilty of an additional five counts of first-degree CSC and one count of second-degree CSC. The court found Petitioner guilty, as charged, of the remaining three counts of first-degree CSC, two counts of second-degree CSC, two counts of distributing sexually explicit material, one count of furnishing alcohol to a minor, and one count of third-degree child abuse. On February 21, 2014, the trial court sentenced Petitioner to prison as follows:

one to two years for each distributing obscene material conviction, 18 to 40 years for the first two CSC–I convictions, 25 to 40 years for the remaining CSC–I conviction, 18 to 40 years for one CSC–II conviction, 1 to 15 years for the other CSC–II conviction, one to two years for the furnishing alcohol to a minor conviction, and three to five years for the third-degree child abuse conviction.

*People v. Hardesty*, No. 320627, 2015 WL 3649049, at *1 (Mich. Ct. App. June 11, 2015).

Petitioner appealed as of right, raising the same claims that he has presented to this Court in his habeas petition. The Michigan Court of Appeals affirmed his convictions, *see id.*, and on March 8, 2016, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Hardesty*, 875 N.W.2d 217 (Mich. 2016).

Petitioner filed his *pro se* habeas corpus petition on October 6, 2016. As noted above, Respondent urges the Court to deny the petition.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal habeas petitioners who challenge

a matter "adjudicated on the merits in State court" to show that the relevant state court "decision" (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Deciding whether a state court's decision "involved" an unreasonable application of federal law or "was based on" an

4

> unreasonable determination of fact requires the federal habeas court to "train its attention on the particular reasons—both legal and factual— why state courts rejected a state prisoner's federal claims," *Hittson v. Chatman,* 576 U.S. ——, ——, 135 S.Ct. 2126, 2126, 192 L.Ed.2d 887 (2015) (GINSBURG, J., concurring in denial of certiorari), and to give appropriate deference to that decision, *Harrington v. Richter,* 562 U.S. 86, 101–102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

*Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018). When, as in this case, the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* at 1192.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). In fact, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the

state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker,* 371 F.3d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

### III.  Analysis

### A.  "Bad Acts" Evidence

Petitioner alleges that the trial court deprived him of due process and a fair trial when it permitted the prosecution to elicit testimony about his other acts of domestic violence and anger toward the complainants, especially the two female complainants.  This issue was raised at a pretrial hearing where the prosecutor indicated that she wanted to introduce evidence that Petitioner used a homemade electrical weapon on the children and also hit them with closed fists, open hands, and a belt.  (1/10/14 Mot. Hr'g Tr. at 5-6.)  The trial court ruled that the evidence

was appropriate and admissible to explain the complainants' delay in reporting

Petitioner's abuse. *Id*. at 18.

Petitioner contends that the evidence also was admitted for other purposes,

such as showing that he was a bad person and had a propensity for violence.

Petitioner also contends that there was no need for additional evidence of his

violence and that the prejudicial nature of the "bad acts" evidence outweighed its

probative value.

The Michigan Court of Appeals concluded on review of Petitioner's claim

that the trial court did not abuse its discretion by allowing the prosecutor to elicit

evidence of Petitioner's other acts of domestic violence. The court of appeals

stated that the evidence was appropriate and admissible under Mich. Comp. Laws

§ 768.27b[1] to show why the children were afraid of Petitioner and did not report

---

1  This statute provides:

Except as provided in subsection (4) [evidence of an act occurring more than 10 years before the charged offense], in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

Mich. Comp. Laws § 768.27b(1).

his abusive behavior at an earlier time. The Michigan Court of Appeals also stated that the evidence gave the trial court a full and complete picture of Petitioner's behavioral history so that the court could view the facts in context. Finally, the court of appeals stated that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

This Court finds no merit in Petitioner's claim because "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Although "the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, it has not explicitly addressed the issue in constitutional terms." *Id*. at 513 (internal citations omitted). Thus, "there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to' under AEDPA." *Id*.

Furthermore, the contention that the evidence was inadmissible under state law is not a basis for federal habeas corpus relief. The Supreme Court has made clear that

> it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Of course, "[i]f a ruling is especially egregious and 'results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief.'" *Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017) (citations omitted). But state-court evidentiary rulings do not rise to the level of a due process violation unless they offend a fundamental principle of justice. *Id*. at 475-76. "Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause." *Id*. at 476.

In the present case, the disputed evidence was admitted for a proper purpose: to show that the complaining witnesses had a reason to fear Petitioner, and for that reason, delayed disclosing Petitioner's abusive conduct. LF, for example, testified that she did not tell anyone what was going on in their household because she was afraid of Petitioner. (1/23/14 Trial Tr. at 73-74, 76.) She thought that Petitioner would "flip out" and hurt her if she disclosed what was happening "[b]ecause he did it all the time." (*Id*. at 74.) She also stated that she did not report the sexual abuse while Petitioner was still living in the household because "[h]e was . . . a threatening person" who "always hurt everybody." (*Id*. at 110.) She thought that he would hurt her and her sister if she disclosed the abuse. (*Id.*)

DW testified that she did not tell her grandmother when Petitioner touched her breasts because he threatened to stick a flat iron in LR's vagina if the girls

mentioned what he was doing.  (1/27/14 Trial Tr. at 96-97.)  She also thought that

Petitioner would hurt her mother or grandmother if she disclosed the truth.  (*Id*. at

126-27.)

In addition to the girls' testimony, the Court notes that Petitioner had a

bench trial.  "Judges are presumed to know the law and apply it in making their

decisions, and to base their judgment on relevant evidence."  *Moreland v.*

*Bradshaw*, 699 F.3d 908, 929 (6th Cir. 2012) (citing *Lambrix v. Singletary,* 520

U.S. 518, 532 n. 4 (1997)).  The trial court, in fact, understood that the "other acts"

evidence could not be used as propensity evidence.  (1/10/14 Mot. Hr'g Tr. at 18.)

To conclude, Petitioner's evidentiary claim is not cognizable on habeas

review, and even if it were, it was not fundamentally unfair to admit evidence of

Petitioner's other "bad acts."  The evidence was admissible under state law for *any*

relevant purpose, Mich. Comp. Laws § 768.27b(1), and its use was not so

egregious or fundamentally unfair as to deprive Petitioner of a fair trial. Petitioner,

therefore, is not entitled to relief on his evidentiary claim.

## B.  The Sufficiency of the Evidence

Petitioner alleges next that there was insufficient evidence to support his

convictions for first- and second-degree CSC.  He points out that the complainants

provided no specific dates for the alleged sexual activity, and there was no

corroborating medical evidence to support the complainants' allegations. According to Petitioner, evidence of criminal sexual conduct was circumstantial at best, and the complainants were not credible.

The Michigan Court of Appeals rejected Petitioner's claim on the merits. The Court of Appeals declined to interfere with the factfinder's role in assessing the credibility of witnesses. The court also pointed out that, under state law, the complainants' testimony did not have be corroborated. The Court of Appeals concluded that Petitioner's CSC convictions were supported by sufficient evidence.

### 1. Clearly Established Federal Law

The Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Following *Winship*, the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard

11

> gives full play to the responsibility of the trier of fact fairly to
> resolve conflicts in the testimony, to weigh the evidence, and to
> draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote

omitted) (emphases in original). This "standard must be applied with explicit

reference to the substantive elements of the criminal offense as defined by state

law." *Id.* at 324 n.16.

Under AEDPA, the Court's "review of a state-court conviction for

sufficiency of the evidence is very limited." *Thomas v. Stephenson*, 898 F.3d 693,

698 (6th Cir. 2018). The Supreme Court has "made clear that *Jackson* claims face

a high bar in federal habeas proceedings because they are subject to two layers of

judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*).

First, it is the responsibility of the factfinder to decide what conclusions

should be drawn from the evidence admitted at trial. *Id.* "And second, on habeas

review, 'a federal court may not overturn a state court decision rejecting a

sufficiency of the evidence challenge simply because the federal court disagrees

with the state court. The federal court instead may do so only if the state court

decision was 'objectively unreasonable.'" *Id.* (end citations omitted).

> "[T]his standard is difficult to meet," no doubt, but "that is because it
> was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct.
> 770, 178 L.Ed.2d 624 (2011). "[H]abeas corpus is a guard against
> extreme malfunctions in the state criminal justice systems, not a

substitute for ordinary error correction through appeal." *Id*. at 102-03, 131 S. Ct. 770 (internal quotation marks and citation omitted).

*Thomas*, 898 F.3d at 698.

## 2. First-Degree CSC

The trial court found Petitioner guilty of three counts of first-degree CSC. As charged in this case, the prosecution had to prove that Petitioner sexually penetrated the complainants either while they were members of the same household and at least thirteen years old, but less than sixteen years old, *see* Mich. Comp. Laws § 750.520b(1)(b)(i), or while they were under the age of thirteen, *see* Mich. Comp. Laws § 750.520b(1)(a). "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body. . . ." Mich. Comp. Laws § 750.520a(r). In reviewing Petitioner's claim, the Court is mindful that, "[i]n criminal sexual conduct cases, a victim's testimony may be sufficient to support a defendant's conviction and need not be corroborated." *People v. Solloway*, 891 N.W.2d 255, 262 (Mich. Ct. App. 2016) (citing *People v. Brantley*, 823 N.W.2d 290 (Mich. Ct. App. 2012), and Mich. Comp. Laws § 750.520h), *leave to appeal denied*, 894 N.W.2d 604 (Mich. 2017).

LF testified that, beginning when she was twelve years old and continuing when she was thirteen years old, Petitioner engaged in vaginal sex with her twenty to thirty times while they were living in the same household. (1/23/14 Trial Tr. at 85-87, 89.) She also testified that there were four or five occasions during that time frame when Petitioner made her and DW suck his penis or scrotum. (*Id*. at 98-99.)

DW was under the age of thirteen during the times in question, and she also testified that Petitioner made her suck his penis or scrotum. (1/27/14 Trial Tr. at 108-15.) She thought that she sucked his penis ten or twelve times. (*Id*. at 115.)

A rational trier of fact could have concluded from the girls' testimony that Petitioner penetrated both girls. The testimony established that Petitioner engaged in fellatio with DW while she was under the age of thirteen. The evidence also established that Petitioner engaged in fellatio and vaginal intercourse with LF while she was either under the age of thirteen or while she was at least thirteen years old, but less than sixteen years old, and living in the same household as Petitioner. Although the girls did not provide specific dates for the incidents in question, "[t]ime is not of the essence, nor is it a material element, in criminal sexual conduct cases involving a child victim." *People v. Dobek*, 732 N.W.2d 546,

564 (Mich. Ct. App. 2007). The evidence, therefore, was sufficient to support Petitioner's three convictions for first-degree CSC.

### 3. Second-Degree CSC

The trial court found Petitioner guilty of two counts of second-degree CSC involving DW. To prove those charges, the prosecutor had to establish that Petitioner had sexual contact with DW when DW was under the age of thirteen. Mich. Comp. Laws § 750.520c(1)(a). The statute defines "sexual contact" as:

> the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:
>
> (i) Revenge.
>
> (ii) To inflict humiliation.
>
> (iii) Out of anger.

Mich. Comp. Laws § 750.520a(q). The phrase "intimate parts" "includes the primary genital area, groin, inner thigh, buttock, or breast of a human being." Mich. Comp. Laws § 750.520a(f).

DW testified that, when she was eleven years old, Petitioner put his hand under her shirt and touched her breasts. When she told Petitioner to stop what he was doing, he covered her mouth and told her to be quiet. (1/27/14 Trial Tr. at 95-

96.)  On another occasion when Petitioner was putting a stereo in the girls' room, Petitioner grabbed her breasts and told LF to grab his penis.  (*Id*. at 101.)

A rational trial of fact could have concluded from DW's testimony that Petitioner had sexual contact with an intimate part of her body for a sexual purpose while DW was under the age of thirteen.  Thus, the evidence supported Petitioner's convictions for second-degree CSC.

Although Petitioner alleges that the girls' testimony was not credible, "[a]ttacks on witness credibility . . . 'are simpl[y] challenges to the quality of the government's evidence and not the sufficiency of the evidence.'"  *United States v. Taylor*, 800 F.3d 701, 712 (6th Cir. 2015) (quoting *United States v. Gibbs,* 182 F.3d 408, 424 (6th Cir.1999)) (alterations added).  In addition, an assessment of a witness's credibility generally is "beyond the scope of federal habeas review of sufficiency of evidence claims."  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  "A reviewing court does not . . . redetermine the credibility of witnesses whose demeanor has been observed by the trial court."  *Id*. (citing *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983)).  "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Id*. (citing *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992)).

To conclude, the prosecution proved the elements of first- and second-degree CSC through LF's and DW's testimony. Their testimony did not have to be corroborated, Mich. Comp. Laws § 750.520h, and they were not required to provide specific dates for the alleged abuse. *See Dobek* supra. Furthermore, the state appellate court's conclusion that Petitioner's convictions were supported by sufficient evidence was neither contrary to, nor an unreasonable application of, *Jackson*. Petitioner is not entitled to relief on his challenge to the sufficiency of the evidence.

### C. Trial Counsel

In his third and final claim, Petitioner argues that his trial attorney rendered constitutionally ineffective assistance. Specifically, Petitioner contends that his attorney: (1) encouraged him to waive his right to a jury trial; (2) ignored his repeated requests for discovery materials, transcripts, and other relevant information; (3) failed to contact, interview, or subpoena witnesses that Petitioner mentioned to counsel; and (4) failed to obtain the parties' phone records and reports prepared by Children's Protective Services ("CPS"). The Michigan Court of Appeals concluded on review of these arguments that Petitioner was not denied the effective assistance of counsel. Petitioner argues, nevertheless, that when

viewing his trial attorney's acts and omission in combination, there is no doubt he was denied the effective assistance of counsel guaranteed under the Constitution.

## 1. Clearly Established Federal Law

The "clearly established Federal law" here is *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel under *Strickland*, a defendant must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id*. at 687. The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*,

18

562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

## 2. Application

### a. Waiving a Jury Trial

Petitioner contends that his trial attorney encouraged him to waive his constitutional right to a jury trial and, in the process, gave up the opportunity to object to incidents brought up by the prosecutor. The Michigan Court of Appeals rejected this claim because Petitioner merely raised the claim in a footnote without addressing it further in his appellate brief.

This Court finds no merit in Petitioner's claim because the record indicates that Petitioner and his attorney discussed the issue and that Petitioner subsequently chose of his own free will to waive his right to a jury trial. Although Petitioner wanted to pick a jury and then make a decision about whether or not to proceed with a jury, the trial court informed him that was not an option, but he could consult further with his attorney. Petitioner declined the invitation to talk with his attorney again, and he stated that he was comfortable with his decision. He also assured the trial court that no one had threatened him or promised him anything to

make him waive his right to a jury trial. He concluded his colloquy with the trial court by stating that he was making the decision freely and voluntarily. (1/21/14 Trial Tr. at 3-6.)

The trial court, moreover, promised not to be biased or prejudiced against Petitioner (*id*. at 5), and nothing in the record suggests that the court was biased or prejudiced. The Court concludes that, even if defense counsel encouraged Petitioner to waive his right to a jury trial, the advice did not amount to deficient performance, and the allegedly deficient performance did not prejudice Petitioner.

### b. Ignoring Petitioner's Requests for Materials

Petitioner alleges next that his attorney ignored his repeated requests for discovery materials, transcripts, and other relevant information that would have helped him assist in his own defense. Petitioner maintains that, if he would have had access to the materials, there could have been a different outcome in his case. The Michigan Court of Appeals found, however, that Petitioner had not proved the factual predicate for his claim, as there was no record evidence regarding whether defense counsel provided Petitioner with discovery materials and a transcript of the preliminary examination.

The record does indicate that defense counsel had access to discovery materials and the transcript of the preliminary examination. Petitioner had no

independent right to his own copy of discoverable documents because he was represented by counsel who had access to the materials. *Williams v. Dark*, 844 F. Supp. 210, 213 (E.D. Pa. 1993).

Furthermore, Petitioner has not explained how the result of the trial would have been different if his attorney had provided him with a personal copy of discovery materials and transcripts. Therefore, even if defense counsel was remiss in failing to provide Petitioner with the requested items, counsel's omissions did not prejudice Petitioner.

### c. Failing to Call Witnesses

Petitioner alleges that his trial attorney failed to contact, interview, or subpoena witnesses that he wanted the attorney to call at trial. Petitioner has not identified the witnesses, but in an affidavit he presented to the state court, Petitioner stated that he wanted to have his attorney produce his sister, nephew, and niece at trial.

The Michigan Court of Appeals rejected Petitioner's claim because there was no evidence in the record regarding the substance of the witnesses' testimony and because Petitioner could not prove that his attorney's decision to not introduce the testimony would have changed the outcome of the trial or benefitted him. The

Court of Appeals concluded that Petitioner had not overcome the presumption that his attorney's assistance was proper.

A defense attorney's duty to make reasonable investigations "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). Under *Strickland*, however, the Court "must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy." *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)). "[C]ounsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." *Lewis v. Alexander*, 11 F.3d 1349, 1353-54 (6th Cir. 1993). Further, in the absence of any affidavits or other evidence showing that uncalled witnesses would have offered specific favorable testimony, a petitioner cannot establish *Strickland* prejudice from counsel's failure to produce the witnesses. *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005).

Petitioner has not provided the Court with any affidavits or other evidence demonstrating what his relatives would have said if they had testified. Therefore, he cannot show that he was prejudiced by the omission of their testimony. *Clark v.*

*Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Petitioner has failed to prove that his attorney's performance was deficient and that the allegedly deficient performance prejudiced the defense.

### d. Failing to Obtain Records

Petitioner alleges that his trial counsel failed to obtain two pieces of evidence that could have helped his defense: the parties' phone records and CPS reports from 1998 until the time of trial. The Michigan Court of Appeals concluded on review of this claim that Petitioner had failed to prove the factual predicate for his claim about the phone records. As for the claim about CPS records, the Court of Appeals stated that Petitioner had not demonstrated that counsel's performance fell below an objective standard of reasonableness.

The Supreme Court has said that defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Here, defense counsel appears to have made a reasonable investigation of CPS records. As pointed out by the Michigan Court of Appeals,

> defense counsel cross-examined LF with CPS reports from August 26, 2011, October 5, 2011, and April 25, 2012. The record also indicates that defense counsel cross-examined DW with CPS reports from August 26, 2011, and April 25, 2012.

*Hardesty*, 2015 WL 3649049, at *6.

Petitioner has not explained how any additional CPS reports would have helped his defense, particularly in light of the fact that defense counsel thoroughly questioned LF and DW about their failure to report Petitioner's conduct to CPS and people they trusted. He also fails to identify how the phone records could have impacted the outcome of his trial. Petitioner has failed to show that defense counsel's performance was deficient and that the allegedly deficient performance prejudiced him.

### e. The Cumulative Effect of the Alleged Errors

Petitioner argues that the cumulative effect of his trial attorney's alleged errors deprived him of the effective assistance of counsel guaranteed under the Constitution. Although the Michigan Court of Appeals did not address this claim, the claim lacks merit for two reasons. First, the Court has found no errors that could be cumulated to provide relief. Second, "the Supreme Court has not recognized cumulative error as a basis for relief in non-capital cases." *Kissner v. Palmer*, 826 F.3d 898, 903–04 (6th Cir. 2016) (citing *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)), *cert. denied*, 137 S. Ct. 1081 (2017). Thus, Petitioner's argument regarding the cumulative effect of errors does not merit habeas relief.

For all the foregoing reasons, Petitioner is not entitled to relief on his claim about trial counsel.

## IV.  Conclusion

For the reasons stated, this Court concludes that the Michigan Court of Appeals' adjudication of Petitioner's claims was objectively reasonable and not so lacking in justification that there was an error beyond any possibility for fairminded disagreement.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because Petitioner has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Additionally, reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the grounds for relief deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

**IT IS FURTHER ORDERED** that Petitioner may proceed in forma pauperis if he appeals this decision, because he was allowed to proceed in forma pauperis in this Court, and an appeal could be taken in good faith.  28 U.S.C.

§ 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

s/ Linda V. Parker
LINDA V. PARKER
UNITED STATES DISTRICT JUDGE

Dated: May 22, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 22, 2019, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager
